# IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF GEORGIA SAVANNAH DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 13 |
| TRENDA F. MOORE, | ) | |
| | ) | Number 20-40309-EJC |
| *Debtor*. | ) | |
| | ) | |
| GEORGIA UNITED CREDIT UNION, | ) | |
| | ) | |
| *Movant*, | ) | |
| | ) | |
| v. | ) | Contested Matter |
| | ) | |
| TRENDA F. MOORE, | ) | |
| | ) | |
| *Respondent*.[1] | ) | |

## OPINION ON DEBTOR'S MOTION FOR STAY PENDING APPEAL

Before the Court is the Motion for Stay Pending Appeal (dckt. 66) filed by Trenda F. Moore (the "Debtor") pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtor filed a Chapter 13 petition on February 28, 2020. (Dckt. 1). Her plan came on for confirmation hearing

---

[1] Although the Debtor filed the instant Motion for Stay Pending Appeal, the style reflects the fact that Georgia United Credit Union objected to confirmation (dckt. 19) and moved for stay relief. (Dckt. 25, 26).

1

on June 4, 2020. Scheduled for hearing that same day were the Amended Motion for Relief from Automatic Stay (the "Motion for Stay Relief") and the Amended Motion for Relief from Co-Debtor Stay (the "Motion for Co-Debtor Stay Relief") filed by Georgia United Credit Union ("GUCU"). (Dckt. 25, 26). On July 16, 2020, the Court entered an order denying confirmation and granting both the Motion for Stay Relief and the Motion for Co-Debtor Stay Relief. (Dckt. 51). The Debtor timely filed a Notice of Appeal on July 28, 2020. (Dckt. 54). Then, on August 7, 2020, the Debtor filed the instant Motion for Stay Pending Appeal to prevent foreclosure of certain real property scheduled for September 1, 2020. For the reasons set forth below, the Court will deny the Debtor's motion.

## I.     Jurisdiction

This Court had subject-matter jurisdiction of the underlying matters of plan confirmation and stay relief pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. These matters are "core proceedings" within the meaning of 28 U.S.C. § 157(b). The Court has subject-matter jurisdiction of the instant Motion for Stay Pending Appeal pursuant to Bankruptcy Rule 8007.

## II.    Factual Background

The facts in this case are largely undisputed. On April 5, 2000, the Debtor's mother, Valerie Moore, became the sole owner of 13.25 acres of real property

2

commonly known as 440 Mill Creek Church Road, Ellabell, Bryan County, Georgia 31308, pursuant to a Certificate of Order of Year's Support from the estate of James Odell Moore. (Ex. "7").[2] Five years later, on May 2, 2005, a plat (which indicates "Survey for: Trenda Moore") was filed in the Bryan County records showing a 1.027-acre parcel fronting on Mill Creek Church Road separated from the remainder of the 13.25-acre tract. (Ex. "8").

On July 5, 2005, the Debtor and her mother Valerie obtained a loan from State Employees Credit Union, whose successor by merger is GUCU, in the amount of $25,000.00 secured by the entire 13.25-acre parcel of real property commonly known as 440 Mill Creek Church Road, as evidenced by an Open-End Home Equity Credit Agreement and Truth in Lending Disclosure (ex. "1") and a Revolving Credit Security Deed. (Ex. "2"). The security deed was subsequently modified on September 4, 2006, to increase the amount of the loan from $25,000.00 to $50,000.00 and to extend the maturity date from July 5, 2020, to September 4, 2021. (Ex. "3"). The security deed was modified a second time on April 16, 2008, to increase the amount of the loan from $50,000.00 to $65,000.00 and to extend the maturity date to April 16, 2023. (Ex. "4").

---

[2] All exhibit references correspond to the exhibits admitted at the June 4, 2020 hearing, as reflected by the Amended Witness and Exhibit Record at Dckt. 55-1. They do not correspond to the exhibits attached to the Appellee's Designation of Items to be Included in the Record on Appeal (dckt. 78), although some exhibits appear in both.

On February 24, 2010, the Debtor's mother Valerie executed a Deed of Gift transferring to the Debtor the 1.027-acre tract that had been surveyed in March of 2005. (Ex. "5"). This 1.027-acre tract subsequently became known as 420 Mill Creek Church Road, Ellabell, Bryan County, Georgia 31308. There is a brick home on the 12.22-acre parcel where the Debtor's mother resided, and the Debtor resides in a mobile home on the 1.027-acre parcel.

Valerie Moore died on April 1, 2019. A petition to probate her last will and testament, executed on September 17, 2002, was filed on August 1, 2019, in the Probate Court of Bryan County. A probate judge admitted the will to probate in an order dated November 12, 2019. (Ex. "6"). The will states in pertinent part as follows:

> I give, and bequeath all my rights, title, and interest which I have in my residence located at 440 Mill Creek Church Road, Ellabell, Georgia to my children, James J. Moore, Icen L. Moore Sr., Debra M. Simmons, Elijah E. Moore, Bertha F. Davis, Anjeanette Mutcherson, Ella M. Moore, and Trenda F. Scott [the Debtor] equally to share and share alike. Should there be a need to sell my above mentioned residence, then each of the above named children shall have a first option to purchase."

(Ex. "6"). No transfer or other disposition of the devised real estate has been made pursuant to this will. After the Debtor's mother passed away in April of 2019,

4

payments to GUCU ceased.[3] According to its proof of claim, the amount of the pre-petition arrearage was $16,437.84. (Claim No. 9-1, p. 2).

## III. Procedural History

On February 28, 2020, on the eve of a scheduled foreclosure by GUCU,[4] the Debtor filed a Chapter 13 petition. (Dckt. 1). On March 12, 2020, the Debtor filed her Chapter 13 plan. (Dckt. 14). Using the Court's local form plan,[5] the Debtor proposed a plan of reorganization whereby she will pay to the Chapter 13 Trustee the sum of $275.00 per month for a minimum of 36 months. (Dckt. 14, p. 1). From this sum, the Trustee will pay $4,500.00 to the Debtor's attorney and $5,312.00 at an interest rate of 4.25% to Flagship Credit Acceptance in monthly payments of $150.00 for the Debtor's 2012 Toyota Corolla (as well as $55.00 per month in adequate protection payments to this same creditor until the plan is confirmed). (Dckt. 14, p. 2-3). Priority claims, which total $1,613.24 according to the claims register, are to be paid in full.[6] (Dckt. 14, p. 2). General unsecured creditors, whose

---

[3] A payment history attached to GUCU's proof of claim indicates that the last payment was made on August 13, 2019. (Claim No. 9-1, p. 21). At the June 4, 2020 hearing, Debtor's counsel stipulated that the last payment of $800.00 was made in August of 2019.

[4] *See* dckt. 25, p. 2.

[5] *See* Fed. R. Bankr. P. 3015.1.

[6] *See* 11 U.S.C. § 1322(a)(2).

claims total about $3,177.00, are to be paid the total sum of $2,450.00, pro rata, over the life of the plan. (Dckt. 14, p. 2).

As to the Debtor's largest creditor, GUCU, which holds an allowed secured claim of $67,121.27 secured by the entire 13.25-acre tract, the Debtor addresses that creditor in two parts of her plan. First, Paragraph 4(f) provides that "[t]he Debtor(s) move(s) to value the claims partially secured[7] by collateral pursuant to 11 U.S.C. § 506 and provide payment in satisfaction of those claims[.]" The Debtor values the 1.027-acre tract at $1.00 (one dollar)[8] in the plan even though she values the same tract in her schedules at $10,700.00.[9] (Dckt. 14, p. 2).

Second, in Paragraph 9 of her plan, the Debtor proposes to surrender to GUCU the 12.22-acre parcel and house at 440 Mill Creek Church Road "in full satisfaction of debt." (Dckt. 14, p. 3). In a nonstandard provision, the Debtor's plan provides that "[a]ny foreclosure notice concerning the real estate at 440 Mill Creek Church [Road], Ellabell, GA must specifically exclude Debtor's property at 420 Mill Creek Church [Road], Ellabell, GA. The 13.25 acres in legal description in security deed includes both properties – only the 12.22 acres at 440 Mill Creek Church [Road] is

---

[7] GUCU's claim is not partially secured.

[8] Confusingly, the Debtor proposes a monthly payment of $1.00 and an interest rate of 4.25% to satisfy this $1.00 claim. (Dckt. 14, p. 2).

[9] *See* dckt. 13, p. 5. The "1989 Peachstate 24x54 mobile home" located on this parcel is valued separately at $18,610.30. (Dckt. 13, p. 4).

6

being surrendered." (Dckt. 14, p. 4). In short, the effect of the plan would be to alter substantially the collateral, for which GUCU bargained when it made the initial loan and the successive additional loans, by carving out the 1.027-acre tract, which effectively reduces the road frontage by roughly half. (Ex. "8," "9," & "10").

On March 16, 2020, GUCU filed its Motion for Stay Relief. (Dckt. 17). In its motion, GUCU argued that cause existed to grant relief from the automatic stay of 11 U.S.C. § 362(a) so that GUCU could exercise its state law rights, including nonjudicial foreclosure, with respect to all of its collateral (i.e. the 13.25 acres). On that same date, GUCU also filed its Motion for Co-Debtor Stay Relief. (Dckt. 18). In that motion, GUCU likewise requested relief from the co-debtor stay of 11 U.S.C. § 1301 with respect to all the collateral. The latter motion identified the non-filing co-debtors as "Estate of Valiree [sic] Moore; Debra M. Simmons; Icen Leon Moore, Sr.; Elijah E. Moore; Anjeanette Mutcherson; Ella M. Moore; Jenialician M. Coulter; Latoria D. Davis, Stanley B. Moore; Kenneth T. Moore; [and] Michael T. Moore." (Dckt. 18, p. 2). On March 17, 2020, GUCU filed its Objection to Confirmation arguing that the Debtor's plan was filed in bad faith based on the Debtor's proposal to pay $1.00 for the 1.027-acre parcel, which the Debtor valued at $10,700.00. (Dckt. 19, p. 2).

GUCU filed its proof of claim in the amount of $67,121.27 on May 7, 2020. (Claim No. 9). The proof of claim states that the claim is secured by real property

7

identified as "420 & 440 Mill Creek Church Rd., Ellabell, GA 31308." (Claim No. 9, p. 2). On March 24, 2020, GUCU amended its motions for stay relief (dckt. 25, 26) to indicate that the 1.027-acre parcel identified by the Debtor as 420 Mill Creek Church Road "is a portion of the 13.25 acres known as 440 Mill Creek Church Road, Ellabell, Georgia 31308." (Dckt. 25, p. 2).

On June 4, 2020, a telephonic hearing[10] was held on confirmation of the Debtor's plan and on the motions for stay relief filed by GUCU. The parties stipulated to the admissibility of seven exhibits: a loan agreement executed by the Debtor and her late mother Valerie Moore on July 5, 2005 (ex. "1"); a revolving credit security deed recorded in Bryan County on July 13, 2005 (ex. "2"); a modification agreement recorded in Bryan County on September 11, 2006 (ex. "3"); a second modification agreement recorded in Bryan County on April 21, 2008 (ex. "4"); a deed of gift between the Debtor and Valerie Moore executed on February 24, 2010 (ex. "5"); the probate record for the estate of Valerie Moore (ex. "6"); and a certificate of order of year's support between the estate of grantor James Odell Moore and the grantee Valerie Moore. (Ex. "7").[11] No testimony was taken, nor was any other evidence presented apart from these exhibits.

---

[10] Due to the coronavirus pandemic, on April 7, 2020, the Clerk entered a Notice of Rescheduled Meeting of Creditors and Confirmation Hearing (dckt. 27) stating that all court hearings would be held telephonically until further notice.

[11] The first six of these exhibits are accessible on the docket as attachments to GUCU's Amended Motion for Co-Debtor Stay Relief. (Dckt. 26, pp. 6-52).

At the hearing, the Debtor urged an interpretation of §§ 1322(b)(8) and 1325(a)(5) by which her proposed satisfaction of GUCU's claim through surrender of the 12.22-acre tract might be accomplished in a Chapter 13 plan. After hearing argument from counsel, as well as from three of the non-filing "co-debtors,"[12] the Court took the pending matters under advisement and requested that the parties brief the issues. Subsequently, the parties submitted three additional stipulated exhibits via email to the Court: a Bryan County plat (reflecting the 1.027-acre carveout) dated March 30, 2005, and recorded on May 2, 2005 (ex. "8"); a tax parcel map for Valerie Moore (ex. "9"); and a tax parcel map for the Debtor. (Ex. "10"). The Debtor filed her brief on June 30, 2020 (dckt. 45), and GUCU filed its brief on July 10, 2020. (Dckt. 48).

At a continued confirmation hearing on July 14, 2020, the Court recited into the record its oral findings of fact and conclusions of law.[13] Specifically, the Court discussed the statutory basis for partial surrender of collateral in a Chapter 13 case and the relevant case law, noting that bankruptcy courts disagree as to whether

---

[12] Debra M. Simmons; Icen Leon Moore, Sr.; and Ella M. Moore appeared telephonically at the hearing. In its Motion for Co-Debtor Stay Relief, GUCU identified all of the Debtor's seven siblings as "co-debtors," although strictly speaking they may not meet the definition under 11 U.S.C. § 1301.

[13] A transcript of this hearing appears at Dckt. 56.

partial surrender is permissible.[14] Ultimately, the Court concluded that 11 U.S.C. § 1322(b)(8), which provides the statutory authorization for surrender of collateral in a Chapter 13 plan, did not permit the Debtor's proposed surrender of the 12.22-acre parcel (in which she has only a 1/8[th] interest) and retention of the 1.027-acre parcel in this case. The Court therefore denied confirmation of the Debtor's plan. As to the motions for stay relief, the Court found that GUCU established sufficient cause for relief from the automatic stay of § 362 and from the co-debtor stay of § 1301. The Court memorialized its ruling in a brief Order Sustaining Objection to Confirmation and Granting Motions for Stay Relief (dckt. 51) entered on July 16, 2020. The order did not dismiss the Debtor's case, and notice of a continued confirmation hearing set for September 1, 2020, was also entered, giving the Debtor sufficient time to file an amended plan if she chose to do so.[15] (Dckt. 50).

On July 28, 2020, Debtor filed a notice of appeal of the Court's decision. (Dckt. 54). Subsequently, on August 7, 2020, the Debtor filed the instant Motion for Stay Pending Appeal. (Dckt. 66). The Debtor requests that the Court "stay the Order and suspend any further continuation of confirmation hearings of the Chapter 13 case pending the outcome of the appeal." (Dckt. 66, p. 2). In particular, the Debtor

---

[14] *Compare In re Keokuk*, 600 B.R. 593 (Bankr. E.D. Ky. 2019); *and In re McCommons*, 288 B.R. 594 (Bankr. M.D. Ga. 2002); *with In re Lemming*, 532 B.R. 398 (Bankr. N.D. Ga. 2015).

[15] At the July 14, 2020 hearing, the Court stated that the Debtor could propose a modified plan. (Dckt. 56, pp. 26-27).

10

seeks "a stay of the Order to the extent that it concerns Debtor's 1.027 acres at 420 Mill Creek Church Road, Ellabell, GA in order to stop the pending foreclosure of Debtor's residence." (Dckt. 66, p. 2). Based on the scheduled foreclosure date of September 1, 2020, the Debtor requested, and the Court granted, an expedited hearing. (Dckt. 67, 69). On August 14, 2020, GUCU filed its Response in Opposition to Debtor's Motion for Stay Pending Appeal. (Dckt. 73). At an expedited hearing on August 18, 2020, the Court heard argument from counsel and took the matter under advisement.

## IV.   Discussion

"The filing of a proper notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the appellate court and divests the trial court of its control over those aspects of the case involved in the appeal." *Walden v. Walker (In re Walker)*, 515 F.3d 1204, 1211 (11th Cir. 2008) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). Bankruptcy Rule 8007(e), however, "permits a bankruptcy court, in its discretion, to suspend or order the continuation of other proceedings in the case or issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest." *In re Breland*, No. 16-2272-JCO, 2017 WL 4857420, at *1 (Bankr. S.D. Ala. Oct. 25, 2017) (quoting *In re Patterson*, AP No. 16-5059-PWB, 2016 WL 4919947, at *1 (Bankr. N.D. Ga. Sept. 2, 2016)). "[O]rdinarily, a party must move first in the bankruptcy

11

court for . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal[.]" Fed. R. Bankr. P. 8007(a)(1)(A).

A stay pending appeal under Bankruptcy Rule 8007 "temporarily suspends proceedings or the effect of a judgment." *Lofstedt v. Kendall (In re Kendall)*, 510 B.R. 356, 359 (Bankr. D. Colo. 2014). It is "an 'extraordinary remedy' and the party seeking it must show: '(1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the [movant] unless the [stay] is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest.'" *Woide v. Fannie Mae (In re Woide)*, 730 F. App'x 731, 737 (11th Cir. 2018) (quoting *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) and citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)).

The movant has the burden of establishing by a preponderance of the evidence that she is entitled to the stay pending appeal. *In re Skymark Prop. II, LLC*, 597 B.R. 619, 624 (Bankr. E.D. Mich. 2019) (quoting *In re Gilbert*, 541 B.R. 415, 418 (Bankr. E.D. Mich. 2015)). Courts disagree as to whether the movant must satisfy each of the four elements. *Compare Breland*, 2017 WL 4857420, at *1 ("The movant . . . must show satisfactory evidence on all four criteria and the failure to satisfy one element is fatal to the motion") *with Skymark Prop. II*, 597 B.R. at 623 ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together."). *See also Powers v. Henderson (In re Powers)*, AP No.

12

16-70006-JJR, 2016 WL 1573791, at *3 (Bankr. N.D. Ala. Apr. 15, 2016) ("The movant has the burden of proving each element, but the court may give greater weight to any of the elements in its discretion depending upon the circumstances of the case."). In any event, the Court's decision in the instant case is the same "regardless of whether it applies the rigid test (requiring compliance with all four factors) or the more generous balancing approach[.]" *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016).

The first factor, the likelihood of success on appeal, "is perhaps the most important factor." *Skymark Prop. II,* 597 B.R. at 624 (quoting *Mich. State A. Philip Randolph Inst. v. Johnson*, 749 F. App'x 342, 344 (6th Cir. 2018)). *See also Veros Energy, LLC v. GCube Ins. Servs., Inc. (In re Veros Energy, LLC)*, AP No. 16-70021-JHH, 2018 WL 2676068, at *4 (Bankr. N.D. Ala. June 1, 2018) ("Typically, this first factor is considered the most important in evaluating whether a stay pending appeal is appropriate."). The movant "need not always establish a high probability of success on the merits[.]" *Skymark Prop. II,* 597 B.R. at 624-25 (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Rather, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay. Simply stated, more of one excuses less of the other." *Id.* (quoting *Griepentrog* at 153). At a minimum, however, the movant must show "serious

13

questions going to the merits." *Id.* (quoting *Griepentrog* at 153-54). To do so, the movant "must provide 'new information, authority or analysis to persuade the Court to reconsider its [prior] decision.'" *In re Bullock*, 603 B.R. 411, 416 (Bankr. S.D. Ill. 2019) (quoting *In re Special Proceedings*, 840 F. Supp. 2d 370, 372 (D.D.C. 2012)).

At the outset, the Court observes that the Debtor has appealed both the denial of confirmation and the granting of stay relief, yet the former is not immediately appealable. Under 28 U.S.C. § 158(a), "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(1). In *Bullard v. Blue Hills Bank*, 575 U.S. 496, 135 S. Ct. 1686 (2015), the Supreme Court of the United States held that a bankruptcy court's order denying confirmation of a Chapter 13 plan with leave to amend is not a "final" order for purposes of § 158(a). As the Supreme Court explained, "only plan confirmation—or case dismissal—alters the status quo and fixes the rights and obligations of the parties. When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike." *Id.* at 1692. "Denial of confirmation with leave to amend, by contrast, changes little. The automatic stay persists. The parties' rights and obligations remain unsettled. The trustee continues to collect funds from the debtor in anticipation of a different plan's eventual confirmation. The possibility of discharge lives on." *Id.* at 1693.

14

Here, the Court denied confirmation with leave to amend and continued the confirmation hearing to September 1, 2020. (Dckt. 50). Thus, the Debtor's appeal of that decision is procedurally improper. In *Bullard*, the Supreme Court identified several alternatives for obtaining appellate review of a denied plan. First, the debtor may "seek or accept dismissal of his case and then appeal[.]" *Id.* at 1695. Second, the debtor could "propose an amended plan and appeal its confirmation." *Id.* Third, "a district court or BAP can . . . grant leave to hear such an appeal" under § 158(a)(3). *Id.* And fourth, § 158(d)(2) "allows a bankruptcy court, district court, BAP, or the parties acting jointly to certify a bankruptcy court's order to the court of appeals, which then has discretion to hear the matter." *Id.* at 1695-96. The Debtor has not availed herself of any of these options, and her improper appeal of the denial of confirmation is therefore unlikely to succeed on the merits. Of course, the District Court will ultimately have to decide whether the denial of confirmation in this case is an appealable order.

Nevertheless, the Court's order of July 16, 2020, also granted relief from the automatic stay and from the co-debtor stay, and the Supreme Court has held that adjudication of a motion for stay relief *is* final and immediately appealable. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020).[16] Therefore, the

---

[16] In *Ritzen*, unlike the instant case, the bankruptcy court denied the creditor's motion for stay relief. The Supreme Court's reasoning, however, applies to any adjudication of a motion for stay relief. The Court held "that the adjudication of a motion for relief from the automatic stay forms

Court will review the four factors with respect to the grant of stay relief and co-debtor stay relief.

Pursuant to § 362(d), "on request of a party in interest and after notice and a hearing," the bankruptcy court may grant relief from the automatic stay, "such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). *See also Disciplinary Board of the Supreme Court of Pa. v. Allen L. Feingold (In re Feingold)*, 730 F.3d 1268, 1276 (11th Cir. 2013). "The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy." *In re TeVoortwis Dairy, LLC*, 605 B.R. 833, 839 (Bankr. E.D. Mich. 2019) (quoting *Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987)). Adequate protection may take the form of cash payments, additional or replacement liens, or the "indubitable equivalent" thereof. 11 U.S.C. § 361.

Section § 362(g) provides that the party requesting stay relief has the burden of proof on the issue of the debtor's equity in property, and the party opposing such relief has the burden of proof on all other issues. 11 U.S.C. § 362(g). The debtor, therefore, "has the burden of proof on the issue of adequate protection." *In re King*,

---

a discrete procedural unit within the embracive bankruptcy case. That unit yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Id.* at 586.

16

614 B.R. 851, 866 (Bankr. E.D. Ark. 2020). "Though the ultimate burden of proof may rest with the party opposing relief on all issues other than equity in the [p]roperty, '[t]he party asserting that cause exists has the burden of establishing the legally sufficient basis for such relief.'" *MSE Sub I LLC v. Louis (In re Louis)*, No. 20-62841-JWC, 2020 WL 2843013, at *2 (Bankr. N.D. Ga. May 29, 2020) (quoting *In re Makarewicz*, 121 B.R. 262, 264-65 (Bankr. S.D. Fla. 1990)).

Here, the Court found that GUCU established cause for relief under § 362(d). The Debtor introduced no evidence on the issue of adequate protection, and there is nothing in the record to indicate how GUCU's interest in the real property would be protected other than by foreclosure. For the same reason, the Court found that GUCU established cause to grant relief from the co-debtor stay under § 1301(c).[17] The Debtor has presented no new information, authority, or analysis that would persuade the Court that granting stay relief was improper.

After the Debtor's mother passed away in April of 2019, the payment history attached to GUCU's proof of claim reflects that it last received a payment in August of 2019 in the amount of $800.00, and Debtor's counsel so stipulated at the June 4, 2020 hearing. By the time the Debtor filed her petition on February 28, 2020, she

---

[17] To the extent that the Court granted stay relief as to the estate of the Debtor's late mother, such relief should have been denied as moot because the co-debtor stay of § 1301 does not apply to an entity, including a decedent estate. *See In re Cook*, No. 14-20547, 2014 WL 5686272, at *1-2 (Bankr. S.D. Ga. Nov. 4, 2014).

was $16,437.84 in arrears. Moreover, the former residence of her mother may have remained unoccupied, but the record is silent as to the condition of the property. The parties stipulated to the admissibility of two tax records of Bryan County: one reflecting a tax value of $88,800.00 for the 12.22-acre tract (ex. "9") and the other reflecting a tax value of $39,370.00 for the 1.027-acre tract. (Ex. "10"). While there may be some nominal equity in the property, the Debtor does not propose to pay the debt owed to GUCU (beyond $1.00 for the 1.027-acre tract). Accordingly, the debt will continue to accrue interest. Moreover, the creditor's entitlement to post-petition attorney's fees will likewise consume at least a portion of the equity cushion.[18] The Court finds that stay relief was properly granted in this case, and that the Debtor's appeal of that ruling is not likely to succeed. The first factor, therefore, weighs against granting the Debtor's request for stay pending appeal.

Under the second factor, the Court is required to consider the risk of harm to the movant in the absence of the stay pending appeal. The harm to the movant must be irreparable, meaning that it "must be neither remote nor speculative, but actual and imminent." *Int'l Christian Broad. Inc. v. Koper (In re Koper)*, 560 B.R. 68, 74 (Bankr. E.D.N.Y. 2016). *See also In re Betteroads Asphalt, LLC*, 610 B.R. 28, 48 (Bankr. D.P.R. 2019) (quoting *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1 st Cir. 2004) ("A finding of irreparable harm must be grounded

---

[18] *See* 11 U.S.C. § 506(b).

18

on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."). "Mere injuries, however substantial, in terms of money, time and energy expended in the absence of a stay, are not enough. The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Skymark Prop. II,* 597 B.R. at 624 (quoting *Griepentrog*, 945 F.2d at 154).

Here, the Debtor contends that foreclosure of the 1.027-acre parcel (along with the remaining 12.22 acres) would "torpedo her reorganization efforts" because she resides in the mobile home on that parcel. (Dckt. 66, p. 10). Courts agree that "loss of a primary residence constitutes irreparable harm." *In re Silva*, No. 9:10-bk-14135-PC, 2015 WL 1259774, at \*6 (Bankr. C.D. Cal. March 17, 2015) (quoting *Hernandez v. Downey Sav. & Loan Ass'n*, No. 08cv2336-IEG (LSP), 2009 WL 704381, at \*9 (S.D. Cal. March 17, 2009)). *See also In re Melton*, No. 8-11-70984-reg., 2011 WL 1600506, at \*3 (Bankr. E.D.N.Y. Apr. 27, 2011) ("Courts have held that forcing a debtor to vacate a residence where the debtor has lived for a long time may cause irreparable harm, particularly where a sale by the bank will leave the debtor with little hope of recovering the property.").

GUCU argues that the Debtor could move the mobile home to another tract of property. (Dckt. 73, p. 4). It is unclear, however, whether the mobile home is part

of the real property. The Debtor's Schedule A describes her real property as including both the 1.027 acres *and* the mobile home. (Dckt. 13, pp. 4-5). At the June 4, 2020 hearing, Debtor's counsel represented that the mobile home was moved to the 1.027-acre parcel in 2005, after the Debtor and her mother executed the loan agreement and the security deed. The security deed includes an after-acquired property clause stating that the property includes "all improvements now or hereafter erected on the property, and all easements, rights, appurtenances and fixtures, all of which shall be deemed to be and remain a part of the property covered by this Security Instrument; and all of the foregoing, together with said property . . . are hereinafter referred to as the 'Property.'" (Ex. "2"). Arguably, then, GUCU's collateral includes the mobile home. Attached to GUCU's proof of claim is a Form T-234 Mobile/Manufactured Home Certificate of Permanency[19] executed on September 7, 2012, but this document was never admitted into evidence. In any event, the Court made no finding that the mobile home is real property, and thus whether it can be moved is an unresolved question. Nevertheless, based on the evidence in the record, the Court finds that the Debtor has shown that foreclosure would cause irreparable harm, and thus this factor weighs in favor of granting a stay pending appeal.

---

[19] *See* O.C.G.A. § 8-2-182.

Third, the movant must establish that a stay pending appeal will not cause substantial harm to other interested parties. "In other words, the moving party must show that the balance of harms tips in favor of granting a stay." *Koper*, 560 B.R. at 75 (quoting *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 349 (S.D.N.Y. 2007)). As noted, GUCU has received no adequate protection payments from the Debtor. At the August 18, 2020 hearing, Debtor's counsel alluded to discussions with GUCU's counsel regarding maintaining insurance and utilities at the brick house on the 12.22-acre parcel, but otherwise the Debtor has proposed no means of adequately protecting GUCU's interest in the collateral during the pendency of the appeal, final adjudication of which could take many months. In balancing the harms, it is clear that the Debtor has already received a lengthy breathing spell from paying this debt by filing for relief under Chapter 13, and GUCU now faces the prospect of prolonged litigation without adequate protection. Moreover, the Debtor's schedules indicate that she cannot afford to pay the debt to GUCU. To her credit, she has never pretended otherwise. Her plan proposes to pay GUCU $1.00. She projects net monthly income of $1,744.29 to pay living expenses of $1,469.00, leaving her disposable income of $275.29 to pay her creditors. (Dckt. 13, p. 2). This factor, therefore, weighs strongly against granting the Debtor's request for a stay pending appeal.

The fourth factor, the public interest, requires the Court to consider "how a stay decision 'has consequences beyond the immediate parties.'" *In re Stewart*, 604 B.R. 900, 909 (Bankr. W.D. Okla. 2019). This factor weighs neither for nor against a stay pending appeal. On one hand, the purpose of Chapter 13 "is to allow an honest but unfortunate debtor a chance to develop a repayment plan under court supervision and protection to alleviate a debt burden that exceeds the debtor's regular income." *In re Dekom*, No. 19-30082-KKS, 2020 WL 4001043, at *3 (Bankr. N.D. Fla. Feb. 11, 2020). On the other hand, the Bankruptcy Code also reflects the public policy of "the equality of distribution to creditor[s] within the priorities established by the Code within a reasonable time." *Bullock*, 603 B.R. at 419 (quoting *In re Doctors Hospital of Hyde Park, Inc.*, 376 B.R. 242 (Bankr. N.D. Ill. 2007)). Courts have explained that the public interest "recognizes the desirability of implementing the legitimate expectations of creditors . . . to get paid." *In re Motors Liquidation Co.*, 539 B.R. 676, 685 (Bankr. S.D.N.Y. 2015) (quoting *In re Chemtura Corp.*, No. 09-11233 (REG), 2010 WL 4638898, at *8 (Bankr. S.D.N.Y. Nov. 8, 2010)). *See also Skymark Prop. II,* 597 B.R. at 626 ("[T]here is a public interest in preventing debtors from using the bankruptcy process to unduly delay creditors from collecting on their [debts]."). A stay pending appeal would unduly delay GUCU from exercising its rights under state law to collects its debts.

22

Having reviewed the four factors, the Court finds that the Debtor has failed to establish by a preponderance of the evidence that she is entitled to the stay pending appeal. To the extent that the Debtor is required to satisfy all four factors, she has failed to do so. Specifically, she has not shown a substantial likelihood that she will prevail on the merits of the appeal and that a stay would cause no substantial harm to GUCU. To the extent that the Court is required to balance the four factors, the Court finds that they weigh against granting a stay pending appeal.

**V.**     **Conclusion**

For the reasons set forth above, the Court will deny the Debtor's Motion for Stay Pending Appeal. (Dckt. 66). A separate Order will be entered consistent with this Opinion.

Dated at Savannah, Georgia, this 27th day of August, 2020.

Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia

23